WALDES et al. v. SCHALL et al.

(District Court, S. D. New York. March 22, 1924.)

War ⟨⇒⟩ 12—Bankers held not liable for assets of foreign partnership, handled in dealing with corporation conducting partnership's United States' business, on theory incorporation was fraud participated in by bank (Trading with Enemy Act, § 7 [b], 40 Stat. 416 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d]).

Where attorneys in fact for a Prague partnership, in February, 1917, incorporated under laws of New York with apparent hope of avoiding seizure of property in event of war, *held* in view of Trading with Enemy Act, § 7 (b), being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d, bankers continuing to deal with corporation as they had with partnership until its dissolution, at direction of Alien Property Custodian, were not liable to account to partnership for assets on theory that incorporation was an attempted fraud on both partnership and United States, in which banking firm participated.

In Equity. Suit for accounting by Jindrich Waldes and others, copartners doing business under the firm name and style of Waldes & Co., against William Schall and another, copartners doing business under the firm name and style of Muller, Schall & Co.

Decree affirmed 11 F.(2d) 453. Decree for defendants.

The findings of fact and opinion of the special master were as follows:

Findings of Fact.

(1) Throughout the whole period during which the transactions involved in this action arose and were performed, the plaintiffs were copartners carrying on the business of manufacturers of snap fasteners at Prague, Bohemia, now in the republic of Czecho-Slovakia, and prior to the establishment of said republic within the dominions of the empire of Austria.

(2) During such period two of said plaintiffs, Jindrich Waldes and Ignatz Puc, were residents of Prague, and the remaining two, Edward Merzinger and Sigmund Waldes, were residents of Dresden, Germany.

(3) During said period the defendants were citizens of the United States and residents of the city of New York, carrying on business as merchant bankers in the borough of Manhattan in said city.

(4) On October 19, 1911, and prior thereto, and until on or about February 20, 1917, the plaintiffs maintained a branch of their business in the city of New York, of which one Sigmund Basch was at first manager, and which, subsequent to on or about the 12th day of August, 1916, was managed and conducted by said Sigmund Basch and M. Taylor Dannreuther, both of the city of New York, as attorneys in fact for the plaintiffs, pursuant to a power of attorney executed and delivered on or about the said 12th day of August, 1916 (Plaintiffs' Exhibit 2).

(5) On or about October 19, 1911, the defendants agreed with the plaintiffs, under their firm name and style of Waldes & Co., by letter of that date (Plaintiffs' Exhibit 1), as follows: "We are to pay the duties on your importations to this country, collect the outstanding accounts resulting from the sale thereof, making payments for your account as per your orders, and remitting to you as required the balance in account; our compensation for attending to the above to be one-half per cent.; interest to be credited at fair rate based on the money market, usually from 2½ per cent. to 3 per cent." (Plaintiffs' Exhibit 1). Business continued under this arrangement between the plaintiffs and the defendants until on or about the 26th day of February, 1917.

(6) The power of attorney executed by the plaintiffs to Basch and Dannreuther in August, 1916, confers upon them as attorneys in fact the most sweeping powers in respect

to all the business and property of the plaintiffs in the United States. The attorneys are authorized to buy, sell, mortgage or lease real and personal property; to collect and discharge demands of every description; to have complete charge and management of all the plaintiffs' business interests in the United States; and to do everything in respect thereto in the opinion of the attorneys necessary or requisite for carrying on, preserving, and protecting the plaintiffs' interests as fully as plaintiffs themselves could do if personally present. In addition to the general powers, to make, sign, indorse, and discount commercial paper, to select depositaries of the business funds, and to sign the names of the plaintiffs and the firm name of Waldes & Co., the attorneys are authorized by subdivisions (g) and (k) as follows:

"(g) To transfer any and all of our assets and business in the United States of America to any person or corporation as may at any time seem proper to our said attorneys, and upon such terms and conditions as may seem proper to them, and we hereby empower them to transfer, not only personal property, but any real property, which may be owned by us in the United States of America, as may seem to them proper."

"(k) To sell any or all securities or shares of stock belonging to us in their possession, and to jointly execute all deeds or other instruments necessary or proper for transferring the same."

(7) Prior to February 3, 1917, the defendants had purchased for the plaintiffs on their order various railroad bonds, of the par value of $100,000, and at some time prior to February 2, 1917, had, by order of the plaintiffs, sent the said bonds to the National City Bank in the city of New York for account of the plaintiffs. On February 2, 1917, the plaintiffs' agents, Basch and Dannreuther, caused the National City Bank to return these securities to the custody of the defendants. The defendants at the same time held for the plaintiffs, previously delivered to the defendants by the plaintiffs' said agents, 798 shares of the stock of the Bank of Europe, a state bank formed under the laws of the state of New York, and doing business in the city of New York. On February 3, 1917, Basch and Dannreuther, agents of the plaintiffs as aforesaid, called at the office of the defendants, presented their said power of attorney, and requested the defendants to deliver to them the said railroad bonds of the par value of $100,000 and the whole 798 shares of stock of the Bank of Europe, at the same time informing the defendants that they intended to incorporate the business of Waldes & Co. under the laws of the state of New York, and to transfer to the corporation the plaintiffs' property under their control pursuant to the authority conferred upon them in that regard by the power of attorney. The defendants, after examining the power of attorney in respect to the authority of the plaintiffs' agents to incorporate the business, delivered the said bonds and bank stock to the said Sigmund Basch and M. Taylor Dannreuther, who were both present at the time and received the same.

(8) On February 2, 1917, the plaintiffs' said agents in New York telegraphed by radiogram to the plaintiffs in Prague: "We intend to incorporate. Wire approval." (Defendants' Exhibit H.) This message was received by the plaintiffs in Prague on or about February 5th. On or about February 12th the plaintiffs' agents in New York again telegraphed to the plaintiffs in Prague to the effect that, having received no reply to their radiogram of the 2nd, they had incorporated, and this message was received by the plaintiffs in Prague on or about February 23, 1917 (Plaintiffs' Exhibit 22). After the receipt of these two messages, the plaintiffs in Prague sent radiograms to their agents in New York on February 27, March 2, and March 5, but in none of these made any reference to the messages received from their agents in respect to the incorporation of the business in New York. The message from the plaintiffs in Prague to their agents in New York dated February 27, 1917 (Defendants' Exhibit I, the approved translation of which is attached, also marked Defendants' Exhibit I), was not intended by the plaintiffs to refer to their agents' messages of February 5 and 12 hereinabove mentioned, and does not reply to the same. These communications between the plaintiffs in Prague and their agents in New York were not brought to the notice of the defendants.

(9) On or about the 20th day of February, 1917, the partnership business of Waldes & Co., previously conducted in the city of New York by the said Basch and Dannreuther as agents of the plaintiffs, was incorporated under the laws of the state of New York under the corporate name of "Waldes & Co., Inc.," and a certificate of such incorporation in due form filed with the secretary of state of the state of New York (Plaintiffs' Exhibit 6). The said corporation, as appears from said certificate, had an authorized capital stock of $500,000, and began business with an issue of 500 shares, of the par value of $100, in all $50,000. Paragraphs "eighth"

and "ninth" of said certificate provide as follows:

Eighth. The names and post office addresses of the directors for the first year, are as follows:

| Names. | Post Office Addresses. |
|---|---|
| Sigmund Basch. | 938 St. Nicholas Avenue, Manhattan, New York City. |
| Herman Basch. | 400 West 160th street, Manhattan, New York City. |
| M. Taylor Dannreuther. | 640 Riverside Drive, Manhattan, New York City. |

Ninth. The names and post office addresses of the subscribers of this certificate, and a statement of the number of shares which each agrees to take in the corporation, are as follows:

| Names. | Post Office Addresses. | No. of Shares. |
|---|---|---|
| Sigmund Basch. | 938 St. Nicholas Avenue, Manhattan, New York City | 2 |
| Herman Basch. | 400 West 160th street Manhattan, New York City | 249 |
| M. Taylor Dannreuther. | 640 Riverside Drive, Manhattan, New York City | 249 |

The incorporators executing the said certificates were Sigmund Basch, Herman Basch, and M. T. Dannreuther, and it is set forth in said certificate that two-thirds of the said incorporators are citizens of the United States.

(10) On or about the 26th day of February, 1917, the defendants received from Waldes & Co., a formal notice of the transfer of all the property of the firm to Waldes & Co., Inc., as follows (Plaintiffs' Exhibit 4):

"137 Fifth Avenue, New York,
"February 26, 1917.
"Muller, Schall & Co., 45 William St., New York City—Gentlemen: This is to advise you that we have, for good and valuable considerations, turned over to Waldes & Co., Inc., all the outstanding accounts, cash on hand, securities, good will, trade-mark and patent rights, and all other assets belonging to us, together with all liabilities. In accordance with the above, you will kindly recognize the authority of Waldes & Company, Inc., in connection with all affairs and business matters previously handled by you for Waldes & Co.

"Very truly yours,
"[Signed] S. Basch, Atty.
"[Signed] M. T. Dannreuther, Atty.
"MTD/LH"

At the same time defendants received from Waldes & Co., Inc., a similar notice in the following form (Exhibit 3):

"137 Fifth Ave., New York,
"February 26, 1917.
"Muller, Schall & Co., 45 William St., New York City—Gentlemen: This is to notify you that we, Waldes & Co., Inc., have taken over all the assets and liabilities of Waldes & Co. in America, and that in future all business relations in connection with which you have previously known Waldes & Co. in America will be with Waldes & Co., Inc.

"Very truly yours,
"Waldes & Company, Inc.
"[Signed] S. Basch, President.
"MTD/LH"

(11) Upon receiving these notifications, defendants continued the account of "Waldes & Co., Prague," as it then stood on their books, except that on and after February 26, 1917, they usually, though not always, wrote at the top of the ledger page "Waldes & Co., Inc., New York," or "New York City," instead of "Waldes & Co., Prague." This continued to be the title of the account on the defendants' books until about February, 1918, when, after the dissolution of the corporation hereinafter mentioned, and the assumption of the liquidation by the Alien Property Custodian, the abbreviation "Inc." was omitted. The business transacted by and between Waldes & Co., Inc., and the defendants, subsequent to April 6, 1917, did not involve, directly or indirectly, transactions with the plaintiffs personally or any communications with them.

(12) The federal statute known as the Trading with the Enemy Act went into effect on October 6, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½ff, 3115½g–3115½j). Within the time allowed by law for making reports under that act to the Alien Property Custodian the directors of Waldes & Co., Inc., reported to the Custodian the origin of their corporation and its relations to the plaintiffs whose partnership after the declaration of war had become an enemy or ally of enemy. Two of the partners resided in Dresden, Germany; the other two in Prague. Prague was then a part of the Austrian empire, and the United States did not declare war against Austria until December 7, 1917. The Alien Property Custodian thereupon ordered the directors of Waldes & Co., Inc., to dissolve their corporation in a voluntary proceeding, as stockholders, under the laws of the state of New York. The directors obeyed this instruction, and on or about January 29, 1918, the said corporation was duly dissolved (Plaintiffs' Exhibit 25). Thereupon the Alien Property Custodian took over the property of the corporation, placed a representative, known as a "supervisor," in charge of the business, and proceeded to liquidate the same in the name of Waldes & Co.

(13) The Alien Property Custodian, on and after December 31, 1917, recognized the account of Muller, Schall & Co. with Waldes & Co., Inc., as a correct and lawful account (Defendants' Exhibits E, F, and G), and during the liquidation of Waldes & Co. by the Alien Property Custodian's supervisor made payments amounting to $5,000 to the defendants, to be credited on the balance due to them from Waldes & Co., Inc.

(14) In July, 1919, the Alien Property Custodian turned over to Jindrich Waldes, one of the plaintiffs, then in the United States, all the plaintiffs' patents and trade-marks, which had been transferred in February, 1917, to a corporation formed under the laws of New Jersey under the name "Waldes & Co., Inc.," for the express purpose of holding such patents and trade-marks. The Custodian also paid over to the plaintiffs $4,500 in cash and $1,200 in Liberty bonds then in his hands, arising from the liquidation of the business by his supervisor, and also furniture, correspondence, books, machinery, and merchandise.

(15) On February 26, 1917, the defendants held on account of the plaintiffs in escrow $8,500 and in another and separate escrow $2,784.96. On and after February 26, 1917, the defendants continued to carry these escrow accounts for the new corporation, to which they had been transferred with the other assets of the plaintiffs. On April 11, 1917, and February 6, 1918, these sums by order of Waldes & Co., Inc., were withdrawn from the escrow accounts and credited to Waldes & Co., Inc., on current account (Exhibit K). On or about October 1, 1917, Waldes & Co., Inc., delivered to the defendants, as collateral for their advances, the railroad bonds, of the par value of $100,000, which had been delivered by the defendants on February 3, 1917, to Basch and Dannreuther then acting as agents for the plaintiffs (Defendants' Exhibits B and D). On December 26, 1917, the defendants were ordered by Waldes & Co., Inc., to sell those bonds for account of the corporation, and to credit the proceeds to its account with the defendants (Defendants' Exhibit C). Between December 28, 1917, and February 19, 1918, defendants sold the said bonds, receiving therefor in all $85,799.25, and credited the sum so received to Waldes & Co., Inc., on current account.

(16) On or about October 31, 1917, Waldes & Co., Inc., delivered to the defendants to be sold for account of the corporation, 798 shares of the stock of the Bank of Europe, which had originally belonged to the plaintiffs, but had been transferred to the corporation at the time it was organized in February, 1917, and requested the defendants to sell the said bank stock for the account of the corporation. On or about December 31, 1917, the defendants returned the said shares of stock of the Bank of Europe to Waldes & Co., Inc., as unsalable by them. Thereafter the said shares were sold by or on behalf of the corporation to one Antonin Chapal. With this sale the defendants had nothing to do, and received no part of the proceeds thereof. The defendants on receiving these bank shares from Waldes & Co., Inc., on October 31, 1917, or thereafter, while the shares remained in the custody of the defendants, did not notify the Alien Property Custodian that such shares were in their possession and were the property of alien enemies. These certificates of shares in the Bank of Europe, when delivered to the defendants for sale as aforesaid, were made out in the name of Waldes & Co., Inc.

(17) In all the transactions of the defendants involved in this action with Waldes & Co. of Prague, or with their agents in New York, or with Waldes & Co., Inc., subsequent to February 26, 1917, the defendants acted in good faith without any intent to defraud the plaintiffs or their agents, or Waldes & Co., Inc., or the United States, and did not defraud any of them in any respect.

## Opinion.

With reference to the foregoing findings some comments on the evidence are necessary before considering the legal questions involved in the case. Both parties refrained from calling as witnesses either Basch or Dannreuther, the agents of the plaintiffs in New York, and neither party introduced testimony of either of these individuals by deposition. Similarly, neither party called any official from the office of the Alien Property Custodian, or attempted by any official documentary evidence to give precise information of the relations of the custodian with Waldes & Co. There is no direct evidence of the report made to the Alien Property Custodian by the directors of Waldes & Co. Neither the terms of the report, nor the date when it was made, nor the date of the seizure of the property by the Alien Property Custodian, whether before or after the dissolution of the corporation, have been definitely shown. All the evidence discloses in respect to such report and seizure is some very scrappy testimony by the manager of the defendants' commercial department, Ehler, that in November or December, 1917, Basch and Dannreu-

ther, plaintiffs' former agents in New York, president and secretary respectively of Waldes & Co., Inc., told him that they had already been several times to Washington to see the Alien Property Custodian, and that he had instructed them to liquidate the corporation under the laws of the state of New York.

It is further proved that the corporation was liquidated in a voluntary proceeding under the laws of the state of New York, and was dissolved about the end of January, 1918. There is evidence, also, which shows that the Alien Property Custodian was conducting the affairs of Waldes & Co. during 1918 and 1919 and communicating in respect thereto with the defendants, receiving from them from time to time, between December 31, 1917, and March 18, 1919, statements of their current account with Waldes & Co., and acknowledging such receipt with apparent approval (Defendants' Exhibits E, F and G). In a letter of March 20, 1919 (Exhibit G), the Alien Property Custodian clearly admits the validity of the defendants' account against Waldes & Co., Inc., and his duty to pay it when he realized a sufficient sum from the liquidation of its assets.

There is no direct evidence of the place of residence of Sigmund Basch and M. Taylor Dannreuther, or of Herman Basch. But the plaintiffs have put in evidence a certified copy from the office of the secretary of state of the state of New York of the certificate of incorporation of Waldes & Co., Inc. (Plaintiffs' Exhibit 6), from which it appears under date of February 14, 1917, that the incorporators, and also the directors for the first year, were Sigmund Basch, Herman Basch, and M. Taylor Dannreuther, and that in February, 1917, all of them resided in the city of New York. It appears, also, from the certificate, that at least two of the three incorporators were citizens of the United States, and it appears from the testimony of Ehler that Herman Basch, who was the brother of Sigmund Basch, one of the agents of the plaintiffs, could not serve as a director of the Bank of Europe, because he was not a citizen of the United States. From this it may be inferred that Sigmund Basch and Dannreuther were citizens. The plaintiffs have also put in evidence (Plaintiffs' Exhibit 25) a certified copy from the office of the secretary of state of the state of New York of the dissolution proceedings of Waldes & Co., Inc., from which, under date of January 26, 1918, it appeared that at that time these three persons were still residents of the city of New York.

In their complaint the plaintiffs, alleging the contract of October 19, 1911, between them and the defendants, pray for an accounting by the defendants covering the whole period between the date of that contract, October 19, 1911, and the commencement of the action in November, 1922. The defendants in their answer concede the right of the plaintiffs to an accounting up to February 26, 1917, when the corporation, Waldes & Co., Inc., was organized. By stipulation between the parties (Exhibit L), the balance due the plaintiffs from the defendants on December 31, 1916, was agreed upon, and it was further agreed that any account filed by the defendants should commence on January 1, 1917. The defendants contend, however, that in view of the organization of the corporation, Waldes & Co., Inc., in February, 1917, and the notifications to them on February 26, 1917, from the plaintiffs' agents and the corporation that all the property of every description of the plaintiffs in the United States had been transferred to such corporation, and that future dealings of the defendants should be with the corporation instead of with the plaintiffs or the plaintiffs' former agents in the United States, the only account to which the plaintiffs are entitled terminates on February 26, 1917.

In order to save the defendants' point, the former special master, while the case was being heard before him, directed the defendants to file an account stating in due form their transactions with the plaintiffs to February 26, 1917, and to file another account, to be entitled "Statement of Transactions by Muller, Schall & Co. with Waldes & Co., Inc.," covering all the transactions with the corporation, Waldes & Co., Inc., and with Waldes & Co. as carried on by the Alien Property Custodian after the dissolution of the corporation. The defendants thereupon filed such account and "statement," which are returned herewith, identified, respectively, as Defendants' Exhibits J and K.

The accuracy of the items of credits and debits in the account and "statement" is not questioned by the plaintiffs, and no formal objections to either document have been filed. The plaintiffs' contention does not involve any attack upon the accuracy of these accounts, and in the view I take of the case on the evidence presented the distinction between these two papers is immaterial. The claim of the plaintiffs is rather difficult to grasp, and it seems advisable to state it as presented in their counsel's brief. He says:

"The action, although brought for an accounting, does not, like the ordinary account-

ing action, involve questions regarding this, that, or the other item of credit or debit, but the broad questions of defendants' responsibility to complainants, as if there had never been any transactions between defendants and the corporation after April 6, 1917, by reason of the illegality thereof because of our entry into the war, upon all the facts and circumstances of the case, and of complainants' responsibility to defendants for the whole balance of account of the corporation. It is complainants' position that, upon the facts and circumstances of this case, the corporation and copartnership were one and the same thing to the knowledge of defendants; that, whether in one form or the other, complainants' enterprise became enemy upon the United States' declaration of war on April 6, 1917, whereafter defendants could not legally trade with plaintiffs either in copartnership or corporate form, and that by reason of this situation all later transactions were illegal, and the moneys and property belonging to plaintiffs in defendants' hands, used in payment of debts due defendants arising from these illegal transactions, without the knowledge or consent of plaintiffs, by former agents, whose agency was destroyed by the war, must be accounted for by the defendants. * * *"

The plaintiffs concede that the organization of the corporation, Waldes & Co., Inc., and the transfer to it of the property of the plaintiffs, including accounts receivable, the railroad bonds of $100,000 par value, the funds held in escrow by the defendants, and the shares of stock of the Bank of Europe, was quite legal at the time, but became illegal by the retroactive operation of the declaration of war against Germany by the United States on April 6, 1917. The plaintiffs say in their first brief:

"Lest the master be misled, it should here be observed that we do not contend that, had war not eventuated, there would have been anything legally wrong in organizing this corporation and transferring to it the copartnership property. For the law of the state of New York gave any one the right to form a corporation for a legal purpose, and their power of attorney gave Basch and Dannreuther the right to avail themselves of this privilege, and transfer this business to the resulting entity, we will assume."

The plaintiffs connect the declaration of war in April with the organization of the corporation in the preceding February, by arguing that on the evidence it must be found that the plaintiffs' agents, in exercising the authority given them under their power of attorney to organize such a corporation, intended thereby to protect the business and property of the plaintiffs, to be transferred to the proposed corporation, against the consequences of the war then threatening and clearly inevitable; that it must be inferred also, from the evidence, that the defendants were fully cognizant that such was the purpose of the incorporation. This argument, to meet its own necessities, extends as it continues, and finally becomes a contention that on all the evidence it must be found that the purpose of the plaintiffs' agents in forming the corporation was to conceal from the United States, if war should be declared, the property of the plaintiffs, who upon such declaration would become alien enemies, and to conceal the fact that the business of the corporation was in truth being carried on for the ultimate benefit of such enemies; that such intended concealment was an unlawful and fraudulent purpose, and by the declaration of war in April became a consummated fraud upon the United States and its laws, and also upon the plaintiffs; that the defendants are chargeable with knowledge of all this and with complicity in the fraud. The plaintiffs say:

"Had war not eventuated, the purpose behind their exercise of these rights [incorporation], though academically or potentially wrong, would never have mounted to the seriousness of a completed legal wrong, and the question has arisen as to the defendants' relation to this wrongful purpose as a basis for going behind the fiction of corporate entity. But as soon as this country entered the war, as every one long previously felt certain that it must, on April 6, 1917, what up to then was an imperfect and potential wrong became ipso facto a complete legal wrong, because the wrongful purpose then fructified and had the effect of creating a situation obnoxious to the law, becoming a fraud upon it."

The plaintiffs contend, also, most strenuously, that the defendants admit that Waldes & Co., Inc., was the same thing as Waldes & Co., the partnership; that this is equivalent to admitting that the corporation was a fraud and a cloak to conceal the partnership, and that all of defendants' dealings with the corporation were consciously carried on by them with the partnership, and therefore with alien enemies. In their reply brief the plaintiffs say:

"The conclusion of defendants' first point is likewise erroneous. Their counsel summed up our position as being that the incorporating of Waldes & Co., Inc., was a fraud, be-

cause done for the purpose of saving the business from seizure and sequestration. That is not the fact. Our position is that the defendants are liable for such of plaintiffs' property as they used to pay void debts [meaning debts incurred by the corporation] arising out of their conceded illegal trading with the enemy, and we further assert that this trading was illegal because non constat it was ostensibly with a corporation it was in fact and substance with plaintiffs, because the corporation was a mere cloak, and defendants knew and intended that their trading in form with this corporation was in reality with the enemy copartnership."

As the result of all this alleged illegality, the plaintiffs contend that the transactions between the defendants and Waldes & Co., Inc., subsequent to April 6, 1917, were unlawful and a fraud on the United States, and so a fraud upon the plaintiffs, and not binding upon them, because their agents, in forming the corporation, were bound to proceed lawfully, not unlawfully, and that the defendants must account to the plaintiffs for all their property in the hands of the defendants on April 6, 1917, and for property thereafter received from the corporation that would have belonged to plaintiffs, if the corporation had never been organized. Specifically, the claim is that the defendants should credit themselves with any balance against the plaintiffs on April 6, 1917, treating transactions with the corporation from February 26 to April 6 as having been had with plaintiffs' agents under the power of attorney, and charge themselves with the proceeds of all accounts receivable then or thereafter held by the defendants for collection arising out of sales made prior to April 6, 1917; also with the sum that the defendants held in escrow, exceeding $10,000; also with all interest collections prior or subsequent to the formation of the corporation upon securities at any time belonging to the plaintiffs, and with the full value of such securities, when finally sold by the defendants, after they had received them from the corporation as collateral, the proceeds of which were credited to the corporation Waldes & Co., Inc., on current account; also with the book value of the 798 shares of the Bank of Europe stock which belonged to the plaintiffs prior to the organization of the corporation, and, after the declaration of war, were delivered by the corporation to the defendants for sale to be credited on its account, but were returned by the defendants to the corporation as unsalable.

I am unable to agree with the plaintiffs' arguments. There is no evidence to justify me in finding that the formation of the corporation of Waldes & Co., Inc., in February, 1917, was tainted with illegality, or that it contemplated a fraud upon the United States, or upon the plaintiffs. Undoubtedly the agents of the plaintiffs in the United States feared and believed that war was approaching, and hoped that by organizing a domestic corporation, and transferring to it in time of peace all the property of their principals in the United States, they would be able, if war came, to continue the business and preserve it as a going concern, and thus protect the plaintiffs' property better than would otherwise be possible.

It is a fair presumption, also, that the defendants believed, and in a certain sense knew, that this was the purpose of the incorporation. They did not know it, however, from any communications made to them by the plaintiffs' agents; but as experienced men in their business they could hardly help drawing such an inference. There is no evidence in the case on which I would be justified in finding that the object of the plaintiffs' agents in organizing the corporation was to conceal from the United States property that, if war were declared, would become property of alien enemies, or in finding that the defendants were in any degree cognizant of such a purpose, if the organizers of the corporation did actually so intend. Indeed, the allegation of intention on the part of the plaintiffs' agents to conceal enemy property in the event of the declaration of war is rather refuted by what they did, because, though organizing the corporation long before the passage of the Trading with the Enemy Act, they kept the name of the existing business, merely adding to "Waldes & Co." the abbreviation "Inc."

Presumably the plaintiffs, under their firm name of Waldes & Co., had become exceedingly well known in their line of business, and if their agents had intended concealment they would have chosen some other name for their corporation while the law permitted (Trading with the Enemy Act, § 4 [b], being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½bb), if not some other method. Whether the plaintiffs' agents had any fraudulent purpose of concealment in organizing the corporation may be effectively tested by what they did after the corporation was formed and war declared. Between April and the passage of the Trading with the Enemy Act on October 6, 1917, there was no federal official to whom the directors of the corporation were called upon to make, or could effectively make, any disclosure of the

relation of their corporation to alien enemies entitled to a beneficial interest therein. After the passage of the act, and well within the time allowed by it for reports to the Alien Property Custodian, the directors of the corporation reported to that official the facts in respect to the origin of their company. This was a performance of their whole duty, and resulted, not only in a seizure of their property, but also in the dissolution of their company.

The evidence is not specific enough to enable me to decide when the seizure was made, but I infer, from what evidence there is, that the Alien Property Custodian regarded Waldes & Co., Inc., as a lawful organization, and induced the stockholders (Basch, his brother, and Dannreuther) to dissolve it, and, having got it out of the way, seized what assets were left and proceeded to liquidate them in the interest of creditors, including the defendants. Furthermore, if the organizers, afterwards the directors, of the corporation had any fraudulent purpose towards the United States, available to the plaintiffs as a cause of action against the directors, I am quite unable to see how the defendants are chargeable. There is not a particle of evidence in the case from which it will be justifiable to find that this fraudulent purpose was disclosed to the defendants, or that they were in any complicity with the corporation therein. But the whole charge of fraud by any one is constructive and inferential, without any basis of fact from which to infer fraud.

Much is argued in respect to the effect of alleged admissions by the defendants that they considered Waldes & Co., Inc., as the same thing as Waldes & Co., the partnership. The effect of these admissions is exaggerated. When Mr. Schall said that he looked on Waldes & Co., the corporation, as the same thing as Waldes & Co., the partnership, he did not mean that the corporation was not a bona fide corporation, or that it was a fraud or a deceptive cloak, or, as it is called somewhere in plaintiffs' brief, "a sham and a humbug." He meant nothing more than that it had continued in corporate form with the defendants the business that Waldes & Co., the partnership, had carried on with them before the corporation was formed. When he testified that he supposed Waldes & Co., the plaintiffs, were interested in the corporation, he was quite correct, because, undoubtedly, while the corporation continued, the plaintiffs were the equitable owners of the stock, which must be deemed to have been held in trust for them by their former agents, who became the stockholders and directors of the corporation.

Nor do I attach any importance as admissions of guilt to the statements of account sent by the defendants to Waldes & Co. after the dissolution of the corporation, and while the Alien Property Custodian was liquidating the business, or to the demands made by the defendants upon the plaintiffs subsequent to the Armistice, or to the commencement of the action in the Supreme Court by the defendants against the plaintiffs to recover the balance of account in the defendants' favor resulting from their transactions with the corporation. These alleged admissions do not strengthen the plaintiffs' allegations of illegality and fraud upon which their claim in this action is based.

If their assumptions and inferences of fact were justified by the evidence, the plaintiffs could not maintain this action in a court of equity, because their complicity with the defendants in this alleged, but quite imaginary, fraud upon themselves and the government of the United States would be established, and the court would leave the parties as they stand. In truth, the plaintiffs' argument, when stripped of words and reduced to the propositions upon which it pretends to rest, defeats itself. It is asserted, first, and most strenuously, that by the declaration of war on April 6, 1917, the power of attorney was annulled; that after that date plaintiffs had no attorneys in fact or other agents authorized to act for them in the United States.

In the next place it is asserted with equal vigor and reiteration that the corporation was a fraud, a deceptive cloak, a sham and humbug; that, as defendants well knew, the corporation was always the partnership, and nothing else, and, as the partnership was composed of alien enemies, the defendants, in dealing with the corporation, were trading always with alien enemies; therefore trading unlawfully, also fraudulently. But the partnership was and is the plaintiffs themselves, the same alien enemies with whom this unlawful trading must have been carried on by defendants, as it takes at least two parties to conduct such trading, and plaintiffs had no agents or other representatives in New York after April 6, 1917. Yet, in spite of this, the argument is that the plaintiffs knew nothing about this unlawful trading with themselves; that, though with themselves and in its transactions honestly conducted by defendants, it was a gross fraud upon the plaintiffs, giving them a right to recover from the defendants the value of all their prop-

erty that in the course of this trading at any time came into the possession of the defendants on and after April 6, 1917.

Now this is a reductio ad absurdum. Possibly the plaintiffs could make such claims and arguments agree in an action for damages against the defendants and the former agents of the plaintiffs, based on allegations of conspiracy to defraud the plaintiffs, and of the organization of the corporation and its transactions with defendants as a part of the conspiracy. Such a claim is not presented in this action, and, if it were, would be refuted by the evidence actually introduced. Indeed, in view of the fact that the agents of the plaintiffs exercised the unlimited authority conferred upon them, as far as the evidence discloses, solely for the protection and ultimate advantage of the plaintiffs, though the results were unfortunate, the plaintiffs' demands against the defendants seem to be singularly devoid of equity.

I do not think the legality and good faith of the corporation Waldes & Co., Inc., has been impeached by any evidence in this case. While it existed, it was a lawful domestic corporation, entitled to do business within the United States and with neutral countries after the declaration of war, and to sue and be sued in our courts. Its directors were all residents of New York, and two, at least, appear to have been citizens of the United States. Such a corporation did not become an alien enemy because alien enemies might have ultimately a beneficial interest in its stock. Undoubtedly, it was subject to the restrictions placed upon all inhabitants of the United States in respect to trading with the enemy, both under the general law after April 6, 1917, and under the Trading with the Enemy Act subsequent to October 6, 1917. Schultz Co., Inc., v. Raimes & Co., 164 N. Y. S. 454, 99 Misc. Rep. 626; Id., 166 N. Y. S. 567, 100 Misc. Rep. 697.

The legality of transfers of property such as that to Waldes & Co., Inc., "prior to the beginning of the war," appears to be recognized by clear implication from the Trading with the Enemy Act (section 7 [b], being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d), even when made to a corporation formed in February, 1917, which, on organization, took over by assignment the property of those who would be alien enemies in the event of war, with intent to avoid confiscation of such property (Stohr v. Wallace [D. C.] 269 F. 827, headnote, subd. 9, opinion, page 841, affirmed in 41 S. Ct. 293, 255 U. S. 239, 65 L. Ed. 604, without considering this point). The District Court said:

"Apparently the United States meant not to inquire into such transfers as in fraud of its rights."

In view of these conclusions, it is unnecessary to consider other points argued on behalf of the parties, further than they are covered by the findings. As the defendants have withdrawn their claim to recover from plaintiffs the balance of account due, arising from the transactions of the corporation until its dissolution, and as affected by the subsequent dealings of the defendants with the Alien Property Custodian acting under the name of Waldes & Co., their demand for affirmative relief is disposed of.

During the hearings it appeared that, if the plaintiffs' claims of illegality and fraud were sustained, they would require some additional details of the account of Waldes & Co., Inc., with the defendants to enable them to compute more accurately the balance claimed by them to be due. In view of my decision on the questions of illegality and fraud, such additional information is clearly unnecessary now. If the plaintiffs ultimately succeed, they should, of course, be allowed any further accounting needed to liquidate their claims.

I respectfully report, therefore:

(1) That the account as filed by the defendants, returned herewith as Exhibit J, covering their transactions with and on behalf of the plaintiffs from January 1, 1917, to and including February 26, 1917, is in all respects correct, and should be judicially settled and allowed as filed.

(2) That the account filed under the name "Statement of Transactions by Muller, Schall & Co. with Waldes & Co., Inc., etc.," returned herewith as Exhibit K, covering their transactions with Waldes & Co., Inc., and with the Alien Property Custodian after the dissolution of the corporation, from February 26, 1917, to and including June 30, 1921, is in all respects correct and should be judicially settled and allowed as filed (except that the balance therein shown to be due to the defendants should not be charged to the plaintiffs).

(3) That the defendants should have judgment that they are not indebted in any sum to the plaintiffs by reason of the matters and things alleged in the amended bill of complaint, and should recover of the plaintiffs the costs and disbursements of this action.

All of which is respectfully submitted.

I return herewith:

(1) Stenographer's minutes of the testimony.

(2) Plaintiffs' Exhibits 1–26, except Ex-

hibits 13–17, both inclusive, being accounts marked for identification in ledger and ledger sheets of defendants, and Exhibit 24 for identification—14 sheets of assignments of accounts contained in defendants' file, entitled "Transfer Case No. 12," which have been returned to the defendants' attorneys.

(3) Defendants' Exhibits A to L.

The master asks that his compensation be fixed at $750, and that there be allowed to Christopher Reckleff $35 for stenographic services to the master in preparing the report, such compensation and expenses as may be allowed to be paid by the parties as the court shall direct.

A certificate showing the services of the master is submitted herewith.

Burnstine & Geist and Henry C. Burnstine, all of New York City, for plaintiffs.

Avery & Whiting, Earl B. Barnes, and Jay E. Whiting, all of New York City, for defendants.

GODDARD, District Judge. This cause came on for final hearing at this term of court, on the special master's report, the exceptions filed by the plaintiffs thereto, and the evidence and proofs in the case, and was argued by counsel, and thereupon, upon consideration thereof, it was ordered, adjudged, and decreed as follows, viz.:

(1) That the exceptions filed by the plaintiffs to the report of the special master be and the same are hereby overruled.

(2) That the report of the special master be and the same hereby is in all respects approved and confirmed.

(3) That the account as filed by the defendants, designated as Exhibit J, covering their transactions with and on behalf of the plaintiffs from January 1, 1917, to and including February 26, 1917, is in all respects correct, and that the same be and hereby is judicially settled and allowed as filed.

(4) That the account as filed by the defendants, designated as Exhibit K, covering their transactions with Waldes & Co., Inc., and with the Alien Property Custodian, after the dissolution of said corporation, from February 26, 1917, to and including June 30, 1921, is in all respects correct, and that the same be and hereby is judicially settled and allowed as filed, except that the balance therein shown to be due the defendants is not to be charged to the plaintiffs.

(5) That the defendants have final decree herein that they are not indebted in any sum to the plaintiffs by reason of the matters or things alleged in the amended bill of complaint.

(6) That the compensation of Wallace Macfarlane, Esq., for his services as special master, be and hereby is fixed at $750; that the compensation of Christopher Reckleff for his stenographic and typewriting services, performed at the request of the special master, in the preparation of his report, be and hereby is fixed at $35, and that the aforesaid sums shall be paid by the plaintiffs, and, in default of payment of the same by the plaintiffs within three days after the entry of this order, may be paid by the defendants and taxed by them as a part of their costs and disbursements in this suit.

(7) That final decree be entered in this cause in conformity with the foregoing, and providing that the defendants recover from the plaintiffs their costs and disbursements in this suit, to be taxed.